**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**NORTHERN DIVISION**

CHRISTOPHER EVERETT,                                                                       PLAINTIFF
ADC #152664

v.                                              3:20CV00176-DPM-JTK

JEREMY COTTREL, et al.                                                                   DEFENDANTS

<u>**PROPOSED FINDINGS AND RECOMMENDATIONS**</u>

<u>**INSTRUCTIONS**</u>

The following recommended disposition has been sent to United States District Chief

Judge D. P. Marshall Jr.    Any party may serve and file written objections to this recommendation.

Objections should be specific and should include the factual or legal basis for the objection.    If

the objection is to a factual finding, specifically identify that finding and the evidence that supports

your objection.    An original and one copy of your objections must be received in the office of the

United States District Court Clerk no later than fourteen (14) days from the date of the findings

and recommendations.    The copy will be furnished to the opposing party.      Failure to file timely

objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or

additional evidence, and to have a hearing for this purpose before the District Judge, you must, at

the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing before the District Judge (if such

a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.      The detail of any testimony desired to be introduced at the hearing before the

1

District Judge in the form of an offer of proof, and a copy, or the original, of any

documentary or other non-testimonial evidence desired to be introduced at the hearing

before the District Judge.

From this submission, the District Judge will determine the necessity for an additional

evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## I.    Introduction

Plaintiff Christopher Everett, a state inmate incarcerated at the Grimes Unit of the Arkansas

Division of Correction (ADC), filed this pro se action pursuant to 42 U.S.C. § 1983, alleging due

process violations while he was incarcerated at the North Central Unit of the ADC in May 2020.

(Doc. No. 5) By Order dated August 17, 2020, the Court limited Plaintiff's claims to nominal

damages or prospective injunctive relief for the alleged procedural due process violations. (Doc.

No. 8) And, on September 29, 2020, the Court dismissed Plaintiff's allegations against Defendant

Banister. (Doc. No. 21)

This matter is before the Court on Defendants' Motion for Summary Judgment, Brief in

Support and Statement of Facts (Doc. Nos. 60-63, 66), to which Plaintiff responded. (Doc. No. 68)

## II.   Amended Complaint (Doc. No. 5)

Plaintiff alleged that Defendant Waddle improperly ordered him to leave the Courtroom

during a disciplinary hearing conducted on May 11, 2020, after Plaintiff told him he did not

understand what Waddle told him. Waddle allegedly told Plaintiff that he waived his presence

2

because he did not cooperate, but Plaintiff claimed he did not understand due to his mental state. Defendant Cottrell then forged the waiver without Plaintiff's permission or knowledge and denied him a fair and just court hearing. Defendants Faust, Naylor, and Payne later denied Plaintiff's appeals, and Defendants Peters and Haycox also violated his rights when they accepted the forged waivers.

## III.    Summary Judgment

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.    See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997).    "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)).    "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135.    Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

### A.    Defendants' Motion

Defendants state that the prospective injunctive relief claims against Defendants Faust and Peter should be dismissed as moot, because neither are currently employed at that Unit. According to her Declaration, Faust is now the Warden at the McPherson Unit. (Doc. No. 60-19) In addition,

3

Plaintiff admitted in his deposition testimony that Peter no longer is employed by the ADC. (Doc. No. 60-1, p. 28) Defendants also state that the injunctive relief claims against all of them should be dismissed because Plaintiff cannot show that they took actions pursuant to an unconstitutional ADC policy or custom or that they used their authority in an unconstitutional manner. They note that any claims that Defendants failed to follow ADC policy fail to support a constitutional claim for relief, and that some evidence was presented to support Plaintiff's disciplinary convictions. They state Plaintiff's nominal damages claims should be dismissed because Plaintiff cannot show they violated his due process rights. Finally, Defendants ask the Court to dismiss Plaintiff's claims against them pursuant to qualified immunity.

In support of their Motion, Defendants present their Declarations, records of the disciplinary charges and hearings, the ADC Disciplinary Manual, a video of the May 11, 2020 disciplinary hearing, and Plaintiff's deposition.

### a)    Disciplinary charges

Plaintiff was charged with six separate disciplinary violations on May 6, 2020.

- At 10:15 a.m., Officer Cody Bruyette charged Plaintiff with violating Codes 05-3 (assault, verbal or written threat) and 15-2 (asking/offering inducement), after Plaintiff cursed and threatened to dash staff. (Doc. No. 60-8)

- At 10:43 a.m., Officer Ian Ward charged Plaintiff with violating Codes 02-12 (keep person/quarters in accordance with regulations), 07-1 (unauthorized use of state property), and 12-3 (failure to obey order of staff), after Plaintiff refused multiple direct orders to submit to strip search and restraints. (Doc. No. 60-9)

- At 2:30 p.m., Officer Ward charged Plaintiff with violating Codes 02-12, 05-3, 11-1 (insolence to a staff member), 12-3, and 12-4 (refusing a direct verbal order), after Plaintiff

threw feces at the cell camera and window and drew on the walls with feces, and then threw feces out of the shower and damaged ADC property. (Doc. No. 60-10)

- At 5:15 p.m., Officer Ward charged Plaintiff with violating Codes 2-12, 05-3, 11-1, 12-3, and 12-4, after Plaintiff again threw and drew on the walls with feces and threatened staff. (Doc. No. 60-11)

- At 8:25 p.m., Officer Alec Wilbur charge Plaintiff with violating Codes 04-17 (throwing/ejecting bodily fluids/excrement striking person) and 12-3, after Plaintiff tried to strike an officer and then spit on the officer. (Doc. No. 60-12)

- At 8:50 p.m., Officer Kevin Holt charged Plaintiff with violating Code 04-17, after Plaintiff became combative toward him and twice spit on him. (Doc. No. 60-13)

According to these documents, Plaintiff was served with notices of all the charges by Defendant Jeremy Cottrell on May 8, 2020, and appeared at a disciplinary court hearing on May 11, 2020, before Defendant Keith Waddle. Plaintiff pleaded not guilty to the charges and was found guilty of most of the charges and received penalties of privilege restrictions, punitive isolation time, and class reduction. Plaintiff's presence at the hearing was waived for failure to cooperate and the F-1 statements from the charging officers and staff reports were accepted.

**b)    Keith Waddle Declarations (Doc. Nos. 60-2, 60-3)**

Waddle was the disciplinary hearing officer for Plaintiff's May 11, 2020 hearing. At the beginning of the hearing, he informed Plaintiff of the offenses for which he was charged, the possible consequences of a finding of guilt on those charges, and then asked Plaintiff if he understood. If an inmate indicates that he does not understand, Waddle asks the inmate to tell him what he does not understand, and if it is clear that the inmate does not understand or is illiterate, a counsel substitute is provided to the inmate. Waddle stated that this was not Plaintiff's first hearing

5

and that he never required a counsel substitute at his prior hearings. It was clear to Waddle that Plaintiff pretended to not understand. Waddle then found Plaintiff waived his appearance due to his behavior and removed Plaintiff from the hearing room. Waddle directed Defendant Cottrell to prepare a waiver of appearance form.

### c)    Jeremy Cottrell Declarations (Doc. Nos. 60-5, 60-18)

Cottrell is a Corporal at the North Central Unit. His responsibilities include: serving inmates with disciplinary charges, receiving the inmates' witness lists, obtaining witness statements, and arranging for inmates to appear in disciplinary court. During the May 11, 2020 hearing, Waddle informed Cottrell that Plaintiff waived his appearance and was removed from the hearing room. At the conclusion of disciplinary hearings, the hearing officer enters a judgment and a printout of the judgment sheet is taken to the inmate. When an inmate is waived, the inmate is not provided with a waiver form to sign; rather, an inmate is asked to sign a waiver form only if he waives his appearance before the hearing. In addition, inmates are not provided with copies of the waiver forms. After Plaintiff was waived and removed from the hearing, Cottrell prepared two waiver forms, noted that Waddle waived Plaintiff, and signed his own name. Plaintiff's signature was not forged, as the place for his signature remained blank. Because Plaintiff did not waive his appearance prior to the hearing, he was not asked to sign the waiver forms.

### d)    Raymond Naylor Declarations (Doc. Nos. 60-4, 60-17)

Naylor served as the Internal Affairs/Disciplinary Hearing Administrator for Plaintiff's May 11, 2020 hearing. His responsibilities include training officers to adhere to procedures and policies regarding the disciplinary process and serving as the second level in the appeals process. He reviewed the procedures set forth in the disciplinary manual, which include at least twenty-four hours' notice to the inmate of a hearing, the right to request witnesses, the right to appear at

6

the hearing unless waived in writing or through behavior, a reading of the offenses charged and possible consequences, and the right to speak at the hearing and submit documentary evidence. After the inmate makes a statement and presents a defense, the disciplinary hearing officer will review and document the witness statements, carefully weigh all the evidence, and render a decision regarding guilt or innocence. Upon a finding of guilt, punishment will be imposed within guidelines established by the disciplinary policy. The inmate also is notified of the right to appeal. If an inmate waives a hearing appearance, either in writing or through his behavior, and is found guilty, the inmate cannot appeal the decision of the disciplinary hearing officer. Because Waddle waived Plaintiff's presence at the hearing due to his behavior, his appeals were rejected and the disciplinary convictions were not reversed.

### e) Nurzhal Faust Declaration (Doc. No. 60-19)

Faust served as Warden of the North Central Unit at the time of the incidents at issue and currently serves as Warden of the McPherson Unit. During her time at the North Central Unit, she was the direct supervisor of Defendants Cottrell and Peter, and responded to inmate appeals. Plaintiff's appeals were rejected because his presence was waived during his hearing, and the Disciplinary Hearing Administrator and the Director also rejected his appeals.

### f) Video (Doc. No. 66)

The video depicts Plaintiff standing in a cell for his hearing. He responded that his name is C. Everett, but stated that he did not understand that he had been charged with assault and violating ADC rules and regulations. When asked what he did not understand, he stammered that he was not mentally capable to understand anything that was going on. When asked if he wanted to waive his hearing, since mental health deemed him capable, he responded that they did not talk to him about it. He then said he did not want to waive his hearing, but that he did not understand "any of

it." When asked to clarify what he did not understand, he replied that he did not understand the

purpose of him being there, and then the hearing officer interrupted him and stated that he did not

ask him if he understand the purpose, but if he understood the charges. The officer again told him

what he was charged with, and Plaintiff responded, "and I'm saying I don't understand it." The

hearing officer then said, "what do you not understand is what I'm asking you, inmate?" Plaintiff

then said, "what I am being charged with." The hearing officer stated, "I just told you." Plaintiff

responded that he did not understand what the hearing officer was saying to him, and when the

hearing officer asked him if he understood what a threat was, he responded, "no." The hearing

officer then waived Plaintiff's presence for failing to cooperate. Plaintiff started to say he was not

trying not to cooperate, and he was escorted from the cell.

        **g)**        **Plaintiff's deposition (Doc. No. 60-1)**

      At the time of his deposition, Plaintiff testified that he was incarcerated at the North Central

Unit and was taking Haldol, an antipsychotic drug because of his "mood stabilization." (pp. 5, 10)

He admitted that he received six disciplinary charges on May 6, 2020, and was notified by

Defendant Cottrell. (p. 16) Plaintiff told Cottrell that he wanted witnesses who were on shift at the

time but were not involved in the disciplinaries. (Id.) Defendant Waddell was the hearing officer

who read the charges against him but did not allow Plaintiff to enter a plea. (p. 17) Plaintiff stated

he tried to tell Waddle he did not understand what he was saying because he was not on his meds

and his mind was a little foggy. (p. 18) Plaintiff stated that he told Waddle he needed counsel but

he ignored Plaintiff and told the officer to remove him from the room because he was waiving the

hearing due to a failure to cooperate. (Id.) Plaintiff repeated that he did not want to waive his rights.

(Id.) An officer escorted Plaintiff out of the room and the next day he received a paper from the

disciplinary court which stated he waived, but he never received a copy of a waiver form and never

refused to sign a waiver form. (pp. 19-20) Waddle did not follow policy which says that if an inmate does not understand, he is supposed to get counsel. (p. 23) Plaintiff stated he was diagnosed with serious depression disorder, prompted by bipolar and ADHD and PTSD by a non-ADC doctor in 2017. (pp. 24-25) he added that an ADC doctor did diagnose him with depression in 2017. (Id.)

Plaintiff stated he did not understand the nature of proceedings and possible consequences, and Waddell failed to follow the counsel substitute policy. (p. 26) The ADC policy also does not allow an inmate to appeal if he waives, and Plaintiff stated that although he did not waive, he appealed. (Id.) He sued Faust, Naylor, and Payne because they denied his appeal and should have reviewed the video to see that he did not waive. (pp. 28-30) He also sued Peter, who was Faust's assistant, and Haycox, who was Payne's assistant, claiming that they should have directed Faust and Payne to review the appeals "better." (pp. 28, 31) Plaintiff stated he wanted expungement, but that if he couldn't get that he would take damages. (p. 32)

B.    **Plaintiff's Response**

Plaintiff denied that his claims against Faust and Peter were moot and stated that the facts warrant a trial because Defendants forged the waiver of his appearance. He stated that qualified immunity does not protect Defendants from nominal damages claims, and that he did not waive his right, but just did not understand. He stated Defendants acted pursuant to an unconstitutional ADC policy or custom and that he should have been provided a counsel substitute. Finally he stated he was on medication at the time and was out of his mind.

C.    **Analysis**

1)    **Official capacity liability**

While Plaintiff cannot recover damages against Defendants sued in their official capacities, prospective injunctive relief is available if he can show that they acted pursuant to an

unconstitutional governmental policy or custom or possessed and used final authority over the subject matter in an unconstitutional manner. Monell v. Dept. of Social Services of City of New York, 436 U.S. 658 (1978); Nix v. Norman, 879 F.2d 429, 432-433 (8th Cir. 1989). Prison disciplinary proceedings, however, are not part of a criminal prosecution, and the full panoply of rights due a defendant does not apply. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Instead, the minimum due process requirements for prisoners in disciplinary proceedings include twenty-four hours' written notice of the charges; the right to appear in person before the hearing body, the right to call witnesses and present documentary evidence, and a written statement of the reasons for the disciplinary action taken. Id. at 563-573.

The ADC policies which govern disciplinary proceedings are Administrative Regulation (AR) 531, which provides the framework for the process, and Administrative Directive (AD) 18-34, which explains a step-by-step analysis of the disciplinary process, the due process considerations afforded to inmates, and a list of sanctions for rule violations. See Doc. Nos. 60-6, 60-7, and Declaration of Defendant Naylor, Doc. No. 60-4. Waddle also stated in his Declaration that the ADC rules include twenty-four hours' prior notice of a disciplinary proceeding, the right to call witnesses and to appear, unless the inmate waives his appearance in writing or through behavior. (Doc. No. 60-4, pp. 2-3) If an inmate waives his appearance prior to the hearing, he completes and signs a waiver form. (Id., p. 3) However, if the inmate's appearance is waived by the hearing officer due to the inmate's behavior, the form is not provided to the inmate for his signature. (Doc. No. 60-18) Once the hearing starts, the inmate is informed of the charges, the possible consequences, and whether he/she understands the nature of the proceedings and consequences, and if not, is asked to clarify what he/she does not understand. (Doc. No. 60-2, pp. 1-2) A counsel substitute is provided when it is clear that the inmate is illiterate or does not

10

understand the proceedings, and Waddle stated Plaintiff never before required a counsel substitute and clearly pretended not to understand at the May 11, 2020 disciplinary hearing. (<u>Id</u>., p. 2) Based on his behavior, Waddle waived his appearance and removed him from the hearing room. (<u>Id</u>.)

The Court finds that Plaintiff provided no evidence that the ADC disciplinary policy was unconstitutional or that it deprived him of his due process right to appear at his hearing. In addition, the Court finds that even if Waddle inappropriately found that Plaintiff's behavior waived his appearance, Waddle's actions did not violate Plaintiff's due process rights, for the following reasons. Within the due process context, Plaintiff's liberty interests are limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause, imposes atypical and significant hardship o the inmate in relation to the ordinary incidents of prison life. <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995). Therefore, Plaintiff did not have a constitutional liberty interest in having state officials follow state law or prison regulations. <u>Phillips v. Norris</u>, 320 F.3d 844, 847 (8th Cir. 2003). Instead, any liberty interest must be in the nature of Plaintiff's confinement and not in the procedures; therefore, Defendant Waddle 's actions did not implicate a liberty interest in following ADC policy. <u>Gardner v. Howard</u>, 109 F.3d 427, 430 (8th Cir 1997). Plaintiff cannot support a due process claim against Defendant Waddle, and even if the Court found that Waddle prematurely waived Plaintiff's presence, Plaintiff provided no evidence that his testimony or other evidence would have resulted in a different outcome. <u>See Mullins v. Mullins</u>, No. 2:16cv00021-BSM-JTR, 2016 WL 8814361 *3-6 (E.D. Ark. 2016), report and recommendation adopted sub nom, <u>Mullins v. Rivera</u>, No. 2:16cv00021-BSM, 2017 WL 1536225 (E.D. Ark. 2017).

Similarly, Plaintiff provided no support that Defendant Cottrell used his authority in an unconstitutional manner, because Plaintiff admitted in his deposition that Cottrell did not forge

11

his signature on the waiver form, and Plaintiff agreed that Cottrell signed his own name on the form to indicate that Defendant Waddle waived Plaintiff's presence. (Doc. No. 60-1, pp. 20-21) In addition, Plaintiff's claims against Faust, Naylor, and Payne, based on their failure to reverse his convictions on appeal, do not support a finding of a constitutional violation. Lomholt v. Holder, 287 F.3d 683, 684 (8th Cir. 2002). And, the involvement of Peter and Haycox based on their responses on behalf of their supervisors, Faust and Payne, do not support a finding of a constitutional violation.

Finally, as Defendants note, Plaintiff cannot support a constitutional claim against them, because they relied on "some evidence" to support the disciplinary convictions. Edwards v. Balisok, 520 U.S. 641, 648 (1997). Waddle stated that after Plaintiff was removed from the hearing room he reviewed the evidence against him by considering the F-1 reports from the charging officers in each disciplinary, which legally suffices as "some evidence" on which to base a disciplinary conviction. Hartsfield v. Nichols, 511 F.3d 826, 831 (8th Cir. 2008). Therefore, the Court finds no basis on which to find Defendants liable on Plaintiff's prospective injunctive relief claims against them.

### 2)    Individual Capacity Liability

Although Plaintiff may recover damages from Defendants acting in their individual capacity, Defendants ask the Court to dismiss these claims based on qualified immunity, which protects officials who act in an objectively reasonable manner. It may shield a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues

concerning qualified immunity are appropriately resolved on summary judgment. <u>See Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985) (the privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. <u>Pearson v. Callahan</u>, 555 U.S. 223, 232 (2009).[1] Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. <u>Nelson v. Correctional Medical Services</u>, 583 F.3d 522, 528 (8th Cir. 2009).

In this case, as noted above, the Court found that Plaintiff did not provide evidence to support a finding that Defendants acted in an unconstitutional manner or failed to provide him due process. In addition, the Court found that Plaintiff's convictions were based on "some evidence." Therefore, the Court finds as a matter of law that Defendants acted reasonably under the circumstances, and that no reasonable fact finder could find that the facts as alleged or shown, construed in the light most favorable to Plaintiff, established a violation of a constitutional or statutory right.

**IV.    Conclusion**

---

[1]Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." <u>Nelson</u>, 583 F.3d at 528 (quoting <u>Pearson v. Callahan</u>, 555 U.S. at 236).

IT IS, THEREFORE, RECOMMENDED that Defendants' Motion for Summary Judgment

(Doc. No. 60) be GRANTED, and Plaintiff's Complaint be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 8th day of July, 2021.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE

14